# Exhibit 5:
# Excerpt from DLBA's Q1 2025 Quarterly Report

# QUIET TITLE

One of the most impactful statutory tools available to the Detroit Land Bank Authority is its ability to clear and quiet title. Historically, the lack of clear title has plagued property ownership across the City. This problem has been significantly reduced due to the diligent work of the DLBA's Quiet Title team.

The Legal Department files and oversees expedited Quiet Title Actions pursuant to extraordinary legal authority granted to land banks in Michigan under Section 9 of the Land Bank Fast Track Act, MCL 124.759., which allows the DLBA to obtain quiet title more efficiently, quickly, and cost-effectively than private parties or municipalities. The DLBA files quiet title actions on its properties in support of its commitment to sell structures with clear, insurable title. By doing so, the DLBA provides buyers with confidence in their ownership and any investment they make in property purchased from the DLBA. Clear title also fulfills a standard requirement of a lender providing financing secured by a mortgage.

During the first quarter, the Quiet Title Team received judgments clearing title to 423 properties and filed 20 additional lawsuits representing 467 properties.



**Q1 QUIET TITLE**

467 — Legal Action Taken
423 — Judgments Granted

# NUISANCE ABATEMENT
## ABANDONED PROPERTIES

The DLBA established its Nuisance Abatement Program (NAP) in February 2014, after the Detroit City Council delegated to the DLBA non-exclusive authority to commence Nuisance Abatement litigation on February 18, 2014 (Council Action Number 23). The criteria for being designated as a NAP-eligible property include that the property is vacant, blighted, and appears to be abandoned or neglected.

The NAP team identifies potential properties using several resources, including city-wide surveys as well as input from the City's Department of Neighborhoods, community groups, and neighbors. Specific locations are then verified by investigators, who place a large notice (poster) on the property.



**Q1 NAP ACTIONS**

306 — NAP Notices Placed
150 — Legal Action Taken
72 — Default Judgements
129 — Agreements
6 — Drug House Unit Legal Action Taken

To achieve proper service of process, the DLBA searches tax, title, and other records for each property to determine current interest holders of record, including owners, mortgage companies, and other lien holders. A NAP civil suit names current owners and other interest holders of record and requests abatement of the nuisance created by the property's condition. Owners or interest holders in a property who fail to respond to the lawsuit or enter into an agreement with the DLBA to abate the nuisance, may lose their ownership rights to the property at a hearing for default judgment.

During the first quarter, the Legal Department placed nuisance abatement notices on 306 properties identified to be vacant and blighted. The NAP Team also filed nuisance abatement lawsuits against 150 vacant and blighted properties in the first quarter. Court proceedings were conducted in a primarily
remote format, and 72 judgments transferring title to the DLBA were issued as the new filings work their way through the court process. In addition, the NAP Team entered into 129 abatement agreements with private owners to rehabilitate their properties.

NAP agreements continued to be a successful tool in addressing private blight with 80 properties achieving Compliance in the first quarter, including the following examples:

## BEFORE AND AFTER
**RENOVATED AS A RESULT OF A NAP AGREEMENT**




