UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KASSANDRA LUDINGTON, et al.

Plaintiffs,

v.

CITY OF DETROIT, a Michigan Municipal
Corporation, and THE DETROIT LAND
BANK AUTHORITY, a public body
corporate,

Defendant.

Case No. 2:25-cv-10307

Hon. Jonathan J.C. Grey

Mag. Judge David R. Grand

---

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULE 12(b)(1) AND 12(b)(6)**

Defendants City of Detroit (the "City") and the Detroit Land Bank Authority (the "Land Bank" or the "DLBA") move for dismissal of Plaintiffs' First Amended Complaint with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because this Court lacks jurisdiction to review the decisions of Michigan state courts, because Plaintiffs' Complaint fails to state a claim on which relief can be granted and because the Defendants are immune from Plaintiffs' tort claims. In support thereof, Defendants incorporate by reference the attached Brief in Support.

WHEREFORE, for the foregoing reasons, and as set forth in the attached Brief in Support, Defendants respectfully ask that this Court dismiss Plaintiffs' First

1

Amended Complaint in its entirety, with prejudice, and grant Defendants any further

relief the Court deems just.

Dated: June 17, 2025                    Respectfully submitted,

                                        /s/ David H. Fink
                                        David H. Fink (P28235)
                                        Nathan J. Fink (P75185)
                                        Philip D.W. Miller (P85277)
                                        David A. Bergh (P83696)
                                        FINK BRESSACK
                                        500 Griswold St., Suite 2400
                                        Detroit, MI 48226
                                        Tel: (248) 971-2500
                                        dfink@finkbressack.com
                                        nfink@finkbressack.com
                                        pmiller@finkbressack.com
                                        dbergh@finkbressack.com

                                        *Counsel for Defendants City of Detroit
                                        and the Detroit Land Bank Authority*


                                        Conrad L. Mallett, Jr. (P30806)
                                        Jason H. Harrison (P62765)
                                        CITY OF DETROIT LAW
                                        DEPARTMENT
                                        Coleman A. Young Municipal Center
                                        2 Woodward Avenue, Suite 500
                                        Detroit, MI 48226
                                        Tel: (313) 224-4550
                                        conrad.mallett@detroitmi.gov
                                        jason.harrison@detroitmi.gov

                                        *Counsel for Defendant City of Detroit*

## LR 7.1 STATEMENT OF CONFERRAL

In accordance with E.D. Mich. LR 7.1(a), there was a conference between counsel for the Defendants and counsel for Plaintiffs in which counsel for the Defendants explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Dated: June 17, 2025

Respectfully submitted,

*/s/ David H. Fink*
David H. Fink (P28235)
Nathan J. Fink (P75185)
Philip D.W. Miller (P85277)
David A. Bergh (P83696)
FINK BRESSACK
500 Griswold St., Suite 2400
Detroit, MI 48226
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
pmiller@finkbressack.com
dbergh@finkbressack.com

*Counsel for Defendants City of Detroit and the Detroit Land Bank Authority*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALTER RITTER, et al.

                Plaintiffs,

                              Case No. 2:25-cv-10307

v.

                              Hon. Jonathan J.C. Grey

CITY OF DETROIT, a Michigan Municipal
Corporation, and THE DETROIT LAND
BANK AUTHORITY, a public body
corporate,

                              Mag. Judge David R. Grand

                Defendant.

---

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
FIRST AMENDED COMPLAINT UNDER RULE 12(b)(1) AND 12(b)(6)**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ......................................................................... ii

STATEMENT OF ISSUES PRESENTED .............................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... vi

TABLE OF AUTHORITIES ................................................................. vii

INTRODUCTION AND FACTUAL BACKGROUND .................................... 1

  I.   Plaintiffs' Properties and the State-Court Litigation ..................................... 2

     a.   Clarence Day ......................................................................... 3

     b.   Jeanette Gordon ..................................................................... 4

     c.   Sheila Todd ........................................................................... 5

     d.   Andre Baker ........................................................................... 6

     e.   Peggy Starks ........................................................................... 7

     f.   Christopher Feala ..................................................................... 8

     g.   Darin McLeskey ..................................................................... 9

     h.   Kassandra Ludington ............................................................... 10

     i.   Ruby Washington ................................................................... 11

     j.   Ward's House, LLC ................................................................. 12

     k.   Tremayne Terrell ................................................................... 13

     l.   Darnell Jackson ..................................................................... 14

     m.  Morgan, Tate & Brewer, LLC .................................................... 15

  II.   The Land Bank's Mission ............................................................... 16

LAW AND ARGUMENT ................................................................... 18

  I.   Standard of Review ....................................................................... 18

  II.   Compensation is Not Required Where a Municipality Acts to Abate a Nuisance. ............................................................................................. 19

  III.  This Court Lacks Jurisdiction to Review Judgments Entered by Michigan State Courts. ......................................................................................... 23

  IV.  Plaintiffs' Claims are Barred by Res Judicata and/or Collateral Estoppel and Represent an Impermissible Collateral Attack. .......................................... 25

     a.   Plaintiffs' Claims are Barred by Res Judicata and/or Collateral Estoppel. ....................................................................................................... 25

b.   Plaintiffs' Claims Represent a Collateral Attack on the State-Court Judgments...........................................................................................27

V.   The Claims of Some Plaintiffs are Time-Barred...........................................28

VI.   Plaintiffs' § 1983 Claims (Counts I-II, V) Fail...........................................30

a.   Plaintiffs' § 1983 Claims under the Fifth and Eighth Amendments (Counts I-II) fail..................................................................................................30

i.   Plaintiffs Have Failed to Adequately Allege that they Suffered a Constitutional Violation. ...............................................................31

ii.   Plaintiffs Have Failed to Adequately Allege that Defendants Caused Their Alleged Injuries....................................................................32

b.   Plaintiffs' § 1983 Due Process Claim (Count V) Fails as a Matter of Law. ................................................................................................................36

c.   Plaintiffs' *Monell* Allegations are Insufficient. ........................................37

VII.   Plaintiffs' Claims under the Michigan Constitution (Counts III, VI) Fail.39

a.   Plaintiffs Fail to Allege a Viable Takings Claim. ......................................39

b.   Plaintiffs Fail to Allege a Viable Excessive Fines Claim. .........................40

c.   Defendants are Immune to Damages on the Michigan Constitutional Claims.........................................................................................................40

VIII.   Plaintiffs' Claim for Compensation "Arising Directly under the Fifth Amendment" (Count IV) Fails as a Matter of Law................................................41

IX.   Plaintiffs' Unjust Enrichment Claim (Count VII) Fails...........................42

a.   The Unjust Enrichment Claim Fails as a Matter of Law. ..........................42

b.   The Unjust Enrichment Claim is a Tort Claim to Which the DLBA is Immune.......................................................................................................43

CONCLUSION ....................................................................................................44

## **STATEMENT OF ISSUES PRESENTED**

1. Whether this Court has jurisdiction over this case where Plaintiffs seek to challenge judgments entered by Michigan state courts through this lawsuit.

   Defendants' Answer: No.

2. Whether Plaintiffs' claims are barred by the statute of limitations and/or res judicata, where each of Plaintiffs' properties were adjudicated to be public nuisances, and some of those adjudications were complete more than six years before the filing of this action.

   Defendants' Answer: Yes.

3. Whether Plaintiffs have stated valid § 1983 claims where Defendants did not violate Plaintiffs' constitutional rights and where Defendants' actions were not the cause of any injury alleged.

   Defendants' Answer: No.

4. Whether Plaintiffs have stated valid state-law takings claims or excessive fines claims where each property at issue was adjudicated to be a public nuisance.

   Defendants' Answer: No.

5. Whether Plaintiffs' unjust enrichment claims and claims for damages under the Michigan Constitution are barred by governmental immunity.

   Defendants' Answer: Yes.

6. Whether Plaintiffs have stated a valid takings claim arising directly under the Fifth Amendment.

Defendants' Answer: No.

# **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978)

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987)

*Collins v. Harker Heights*, 503 U.S. 115 (1992)

*Lucas v. Monroe County*, 203 F.3d 964 (6th Cir. 2000)

*Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487 (6th Cir. 2001)

*Crow v. City of Springfield, Ohio*, 15 F. App'x. 219 (6th Cir. 2001)

*Davet v. City of Cleveland*, 456 F.3d 549 (6th Cir. 2006)

*Abbott v. Michigan*, 474 F.3d 324 (6th Cir. 2007)

*Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007)

*Powers v. Hamilton Cnty. Pub. Defender Com'n*, 501 F.3d 592 (6th Cir. 2007)

*Kendall v. Urban League of Flint*, 612 F. Supp. 2d 871 (E.D. Mich. 2009)

*Wells ex rel. Bankr. Estate of Arnone-Doran v. City of Grosse Pointe Farms*, 581 F. App'x. 469 (6th Cir. 2014)

*Kircher v. City of Ypsilanti*, 809 F. App'x. 284 (6th Cir. 2020)

*Proctor v. Saginaw*, 985 N.W.2d 193 (Mich. Ct. App. 2022)

*Republic Bldg. Co., Inc. v. Charter Twp. Of Clinton, Mich*., 81 F.4th 662 (6th Cir. 2023)

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Michigan*,
474 F.3d 324 (6th Cir. 2007) ................................................................. 25

*Adair v. State*,
680 N.W.2d 386 (Mich. 2004) ............................................................... 26

*Amini v. Oberlin Coll.*,
259 F.3d 493 (6th Cir. 2001) ................................................................. 19

*Anderson v. Charter Twp. of Ypsilanti*,
266 F.3d 487 (6th Cir. 2001) ................................................................. 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 19

*Austin v. United States*,
509 U.S. 602 (1993) .............................................................................. 31

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
520 U.S. 397 (1997) .............................................................................. 37

*Beck v. FCA US LLC*,
273 F. Supp. 3d 735 (E.D. Mich. 2017) ............................................... 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 19

*Belle Isle Grille Corp. v. City of Detroit*,
666 N.W.2d 271 (Mich. Ct. App. 2003) ............................................... 42

*Berry v. Schmitt*,
688 F.3d 290 (6th Cir. 2012) ................................................................. 23

*Buck v. Thomas M. Cooley Law Sch.*,
597 F.3d 812 (6th Cir. 2010) ................................................................. 23

*Buhl v. City of Oak Park*,
968 N.W.2d 348 (Mich. 2021) ............................................................... 43

*Coe v. Schultz*,
2 Abb. Pr. (n.s.) 193; 47 Barb. 64 (N.Y. Gen. Term 1866) .................. 23

*Collins v. Harker Heights*,
503 U.S. 115 (1992) .............................................................................. 33

*Connick v. Thompson*,
563 U.S. 51 (2011) ................................................................................ 37

*Cooey v. Strickland*,
479 F.3d 412 (6th Cir. 2007) ................................................................. 28

*Crow v. City of Springfield, Ohio*,
15 F. App'x. 219 (6th Cir. 2001) ........................................................... 28

*Davet v. City of Cleveland*,
  456 F.3d 549 (6th Cir. 2006) ................................................................20
*Derderian v. Genesys Health Care Sys.*,
  689 N.W.2d 145 (Mich. Ct. App. 2004) ...............................................34
*Dist. of Columbia Court of Appeals v. Feldman*,
  460 U.S. 462 (1983) ..............................................................................24
*Egervary v. Young*,
  366 F.3d 238 (3d Cir. 2004) ........................................................... 29, 35
*Eggelston v. Twentieth Century Fox Film Corp.*,
  696 F. Supp. 3d 295 (E.D. Mich. 2023) ...............................................29
*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
  544 U.S. 280 (2005) ..............................................................................24
*Hall v. Meisner*,
  51 F.4th 185 (6th Cir. 2022) .................................................................22
*Hardrick v. City of Detroit*,
  876 F.3d 238 (6th Cir. 2017) ................................................................30
*Jackson v. City of Cleveland*,
  925 F.3d 793 (6th Cir. 2019) ................................................................37
*Jeffries v. Harleston*,
  52 F.3d 9 (2d Cir. 1995) .......................................................................35
*Jones v. City of Chicago*,
  856 F.2d 985 (7th Cir. 1988) ................................................................34
*Jones v. Powell*,
  612 N.W.2d 423 (Mich. 2000) ..............................................................40
*Kendall v. Urban League of Flint*,
  612 F. Supp. 2d 871 (E.D. Mich. 2009) ...............................................35
*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
  480 U.S. 470 (1987) ...................................................................... passim
*Kircher v. Charter Twp. of Ypsilanti*,
  No. 20-1923, 2021 WL 11097070 (6th Cir. Nov. 15, 2021) ................27
*Kircher v. City of Ypsilanti*,
  809 F. App'x. 284 (6th Cir. 2020) .................................................. 26, 27
*Knick v. Twp. of Scott, PA*,
  588 U.S. 180 (2019) ..............................................................................30
*Lamont v. New Jersey*,
  637 F.3d 177 (3d Cir. 2011) .................................................................33
*Lucas v. Monroe County*,
  203 F.3d 964 (6th Cir. 2000) ................................................................43
*Lucas v. S.C. Coastal Council*,
  505 U.S. 1003 (1992) ............................................................................20

*Manhattan Mfg. & Fertilizer Co. v. Van Keuren*,
   23 N.J. Eq. 251(N.J. Ch. 1872) ...........................................................22
*Marvaso v. Sanchez*,
   917 F.3d 599 (6th Cir. 2020) ...............................................................33
*Mayor of the City of Lansing v. Knights of the Ku Klux Klan*,
   564 N.W.2d 177 (Mich. Ct. App. 1997)..............................................35
*McCormick v. Braverman*,
   451 F.3d 382 (6th Cir. 2006) ...............................................................24
*Migra v. Warren City Sch. Dist. Bd. of Ed.*,
   465 U.S. 75 (1984) ...............................................................................25
*Monat v. State Farm Ins. Co.*,
   677 N.W.2d 843 (Mich. 2004) .............................................................26
*Monell v. Department of Social Services of New York*,
   436 U.S. 658 (1978) ............................................................ 30, 33, 37, 42
*Musson Theatrical, Inc. v. Fed. Express Corp.*,
   89 F.3d 1244 (6th Cir. 1996) ...............................................................18
*One Lot Emeral Cut Stones v. United States*,
   409 U.S. 232 (1972) .............................................................................31
*Powers v. Hamilton Cnty. Pub. Defender Com'n*,
   501 F.3d 592 (6th Cir. 2007) ...............................................................33
*Pratt v. Ventas, Inc.*,
   365 F.3d 514 (6th Cir. 2004) ...............................................................27
*Proctor v. Saginaw*,
   985 N.W.2d 193 (Mich. Ct. App. 2022)..............................................40
*Rafaeli, LLC v. Oakland County*,
   952 N.W.2d 434 (Mich. 2020) .............................................................21
*Ratte v. Corrigan*,
   989 F. Supp. 2d 550 (E.D. Mich. 2013) ..............................................18
*Rental Prop. Owners Ass'n of Kent Cnty. v. City of Grand Rapids*,
   566 N.W.2d 514 (Mich. 1997) .............................................................39
*Republic Bldg. Co., Inc. v. Charter Twp. Of Clinton, Mich.*,
   81 F.4th 662 (6th Cir. 2023)................................................................28
*Richards v. Tibaldi*,
   726 N.W.2d 770 (Mich. Ct. App. 2006)..............................................26
*Rohe Scientific v. Nat'l Bank of Detroit*,
   350 N.W.2d 280 (Mich. Ct. App. 1984)..............................................26
*Schafer v. Kent Cnty.*,
   — N.W.3d. —, 2024 WL 3573500 (Mich. 2024) ...............................29
*Sheppard v. E.W. Scripps Co.*,
   421 F.2d 555 (6th Cir. 1970) ...............................................................35

*Stanton v. Auto Owners Ins. Co.*,
   2016 WL 6269614 (Mich. Ct. App. Oct. 25, 2016) ...........................................26
*Terry v. Tyson Farms, Inc.*,
   604 F.3d 272 (6th Cir. 2010) ...........................................................................19
*Thomas v. City of Chattanooga*,
   398 F.3d 426 (6th Cir. 2005) ...........................................................................38
*Tkachik v. Mandeville*,
   790 N.W.2d 260 (Mich. 2010) .........................................................................20
*Townes v. City of New York*,
   176 F.3d 138 (2d Cir. 1999) .............................................................................35
*Tyler v. Hennepin County, Minnesota*,
   598 U.S. 631 (2023) .........................................................................................21
*U.S. v. Bajakajian*,
   524 U.S. 321 (1998) .........................................................................................31
*United States v. Asakevich*,
   810 F.3d 418 (6th Cir. 2016) ...........................................................................27
*United States v. Ritchie*,
   15 F.3d 592 (6th Cir. 1994) .............................................................................18
*VanderKodde v. Mary Jane M. Elliott, P.C.*,
   951 F.3d 397 (6th Cir. 2020) ...........................................................................24
*W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*,
   765 F.3d 625 (6th Cir. 2014) ...........................................................................26
*Wells ex rel. Bankr. Estate of Arnone-Doran v. City of Grosse Pointe Farms*,
   581 F. App'x. 469 (6th Cir. 2014) .....................................................................41
*Winkler v. Madison Cnty.*,
   893 F.3d 877 (6th Cir. 2018) ...........................................................................39
*Wolfe v. Perry*,
   412 F.3d 707 (6th Cir. 2005) ...........................................................................28
*Wright v. Genesee Cnty.*,
   934 N.W.2d 805 (Mich. 2019) .........................................................................43
*Ypsilanti Fire Marshal v. Kircher*,
   730 N.W.2d 481 (Mich. Ct. App. 2007)............................................................21

**Statutes**
42 U.S.C. § 1983 ..................................................................................................40
Mich. Comp. Laws § 600.2940..................................................................... 20, 38
Mich. Comp. Laws § 600.5805..................................................................... 28, 29
Mich. Comp. Laws § 600.5807..............................................................................29
Mich. Comp. Laws § 600.5813..............................................................................29
Mich. Comp. Laws § 691.1401, *et seq.* ................................................................43

Mich. Comp. Laws § 691.1407 .................................................................................43

**Rules**

Fed. R. Civ. P. 12(b)(1) ...........................................................................................18

Fed. R. Civ. P. 12(b)(6) ...........................................................................................19

**Treatises**

Black's Law Dictionary (10th ed. 2014) ...................................................................27

## <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

For decades, the City of Detroit (the "City") has been home to tens of thousands of abandoned, blighted residential properties. These vacant, blighted residential properties serve as havens for crime and significantly reduce the value of neighboring properties, which, in turn, creates more abandoned properties, creating a cycle of blight that has threatened Detroit's historic comeback. To address this problem, the City and the Detroit Land Bank Authority (the "DLBA" or the "Land Bank") have acted vigorously to combat abandonment and blight through code enforcement actions and through the Land Bank's Nuisance Abatement Program (the "NAP"), which Plaintiffs challenge through this action.[1]

Each of the Plaintiffs owned a vacant, blighted residential property in the City of Detroit. To carry out its mission to reduce promote the public welfare by eliminating blight and fostering the redevelopment of blighted properties, the Land Bank identified each property as a potential public nuisance under the NAP. For properties where the owner responds to the notice that the Land Bank will be taking action regarding the property, the Land Bank attempts to work with the property owner to rehabilitate the property. Where the property owner does not respond to the

---

[1] The NAP is designed to target properties owned by speculators and properties that have been abandoned, not properties owned by economically disadvantaged homeowners. The Land Bank attempts to avoid filing NAP lawsuits against occupied properties and, where the Land Bank learns that a lawsuit has been filed against an occupied property, it dismisses the lawsuit as a matter of policy.

NAP notice, or refuses to rehabilitate their property, the Land Bank files a lawsuit against the property, alleging that the property constitutes a common-law and/or statutory nuisance. The NAP lawsuits request an order finding that the property at issue is a public nuisance and requiring the property owner to abate the nuisance. Transfer of title to the Land Bank is requested only as a last resort, where the property owner fails to appear or otherwise contest the lawsuit, and the Court has no means of compelling the property owner to abate the nuisance.

Each of the Plaintiffs failed to contest the lawsuit filed regarding their property. And, for each property at issue in this lawsuit, a default judgment was entered in the Wayne County Circuit Court, adjudicating the property to be a public nuisance. Through this lawsuit, Plaintiffs attempt to collaterally attack those state court judgments. Plaintiffs' claims must be dismissed because (1) this Court lacks jurisdiction to review state court judgments; (2) to the extent that Plaintiffs seek to impose tort liability on the Defendants, those claims are barred by governmental immunity; (3) Plaintiffs' claims are barred by res judicata and the statute of limitations; and (4) Plaintiffs have failed to state valid claims.

## I.   Plaintiffs' Properties and the State-Court Litigation

The condition of each of the properties owned by the Plaintiffs demonstrates why the Land Bank's NAP program is necessary to combat vacant, blighted residential structures.

### a. Clarence Day

Clarence Day alleges that the DLBA took title to his property at 5163 Garland Street on or about June 14, 2024. First Amended Complaint ("FAC"), ECF No. 13, PageID.349, ¶ 137. At the time the Land Bank filed the nuisance abatement action regarding the 5163 Garland property, the property looked like this:



Transfer of title to the 5163 Garland property was done through a default judgment entered on June 17, 2024 by Judge Leslie Kim Smith of the Wayne County Circuit Court. Exhibit 1 – 5163 Garland Judgment. The judgment adjudicated the 5163 Garland Street property to be a public nuisance. Because she found that "the Defendant Owner and Interest Holder has failed to abate the nuisance, and no other remedy being available," Judge Smith awarded title to the 5163 Garland Street

3

property to the DLBA to "abate the nuisance as it deems appropriate, including by demolition or sale." Exhibit 1.

### b. Jeanette Gordon

Jeanette Gordon alleges that the DLBA took title to her property at 18541 Fielding Street on or about May 3, 2024. FAC, ECF No. 13, PageID.304, ¶ 13. At the time the Land Bank filed the nuisance abatement action regarding the 18541 Fielding property, the property looked like this:



Transfer of title to the 18541 Fielding property was done through a default judgment entered on May 6, 2024 by Judge Leslie Kim Smith of the Wayne County Circuit Court. Exhibit 2 – 18541 Fielding Judgment. The judgment adjudicated the 18541 Fielding property to be a public nuisance. Because she found that "the Defendant

Owner and Interest Holder has failed to abate the nuisance, and no other remedy being available," Judge Smith awarded title to the 18541 Fielding property to the DLBA to "abate the nuisance as it deems appropriate, including by demolition or sale." Exhibit 2.

### c. Sheila Todd

Sheila Todd alleges that the DLBA took title to her property at 961 E. Savannah Street on or about July 17, 2014. FAC, ECF No. 13, PageID.348, ¶ 129. At the time the Land Bank filed the nuisance abatement action regarding the 961 E. Savannah property, the property looked like this:



Transfer of title to the 961 E. Savannah property was done through a default judgment entered on July 17, 2015 by then-Chief Judge Robert Colombo, Jr. of the Wayne County Circuit Court. Exhibit 3 – 961 E. Savannah Judgment. The judgment adjudicated the 961 E. Savannah Street property to be a public nuisance and awarded

title to the 961 E. Savannah Street property to the DLBA, "in order to equitably defray the costs of abatement of the nuisance, actual attorney fees and court costs." Exhibit 3.

### d. Andre Baker

Andre Baker alleges that the DLBA took title to his property at 15891 Holmur Street on March 8, 2024. At the time the Land Bank filed the nuisance abatement action regarding the 15891 Holmur property, the property looked like this:



Transfer of title to the 15891 Holmur property was done through a default judgment entered on April 26, 2024 by Chief Judge Patricia Fresard of the Wayne County Circuit Court. Exhibit 4 – 15891 Holmur Default Judgment. The judgment adjudicated the 15891 Holmur property to be a public nuisance. Because she found

that "the Defendant Owner and Interest Holder has failed to abate the nuisance, and no other remedy being available," Chief Judge Fresard awarded title to the 15891 Holmur property to the DLBA to "abate the nuisance as it deems appropriate, including by demolition or sale." Exhibit 4.

### e. Peggy Starks

Peggy Starks alleges that the DLBA took title to her property at 5250 Bewick Street on or about March 8, 2024. FAC, ECF No. 13, PageID.306, ¶ 19. At the time the Land Bank filed the nuisance abatement action regarding the 5250 Bewick property, the property looked like this:



Transfer of title to the 5250 Bewick property was done through a default judgment entered on April 5, 2024 by Judge Leslie Kim Smith of the Wayne County Circuit

Court. Exhibit 5 – 5250 Bewick Default Judgment. The judgment adjudicated the 5250 Bewick property to be a public nuisance. Because she found that "the Defendant Owner and Interest Holder has failed to abate the nuisance, and no other remedy being available," Judge Smith awarded title to the 5250 Bewick property to the DLBA to "abate the nuisance as it deems appropriate, including by demolition or sale." Exhibit 5.

### f. Christopher Feala

Christopher Feala alleges that the DLBA took title to his property at 4428 Harding Street on or about January 23, 2024. FAC, ECF No. 13, PageID.306, ¶ 18. At the time the Land Bank filed the nuisance abatement action regarding the 4428 Harding property, the property looked like this:



Transfer of title to the 4428 Harding property was done through a default judgment entered on February 2, 2024 by Chief Judge Patricia Fresard of the Wayne County

Circuit Court. Exhibit 6 – 4428 Harding Judgment. The judgment adjudicated the 4428 Harding Street property to be a public nuisance. Because she found that "the Defendant Owner and Interest Holder has failed to abate the nuisance, and no other remedy being available," Chief Judge Fresard awarded title to the 18541 Fielding Street property to the DLBA to "abate the nuisance as it deems appropriate, including by demolition or sale." Exhibit 6.

### g.  Darin McLeskey

Darin McLeskey alleges that the DLBA took title to his property at 14128 Orleans Street on or about June 28, 2024. FAC, ECF No. 13, PageID.349, ¶ 134. At the time the Land Bank filed the nuisance abatement action regarding the 14128 Orleans property, the property looked like this:



Transfer of title to the 14128 Orleans property was done through a default judgment entered on July 1, 2024 by Judge Leslie Kim Smith of the Wayne County Circuit Court. Exhibit 7 - 14128 Orleans Street Judgment. The judgment adjudicated the 14128 Orleans Street property to be a public nuisance.  Because she found that "the Defendant Owner(s) and Interest Holder(s) have failed to abate the nuisance, and no other remedy being available," Judge Smith awarded title to the 14128 Orleans Street property to the DLBA to "abate the nuisance as it deems appropriate, including by demolition or sale." Exhibit 7.

### h.  Kassandra Ludington

Kassandra Ludington alleges that the DLBA took title to her property at 8205 Dexter on June 22, 2023. First Amended Complaint ("FAC"), ECF No. 13, PageID.301, ¶ 4. At the time the Land Bank filed the nuisance abatement action regarding the 8205 Dexter property, the property looked like this:



Transfer of title to the 8205 Dexter property was done through a default judgment entered on July 6, 2023 by Wayne County Circuit Court Chief Judge Patricia Fresard. Exhibit 8 – 8205 Dexter Default Judgment. The judgment adjudicated the 8205 Dexter property to be a public nuisance. Because she found that "the Defendant Owner and Interest Holder has failed to abate the nuisance, and no other remedy being available," Chief Judge Fresard awarded title to the 8205 Dexter property to the DLBA to "abate the nuisance as it deems appropriate, including by demolition or sale." Exhibit 8.

### i. Ruby Washington

Ruby Washington alleges that the DLBA took title to her property at 20016 Santa Rosa Street on October 10, 2015. FAC, ECF No. 13, PageID.301, ¶ 6. At the time the Land Bank filed the nuisance abatement action regarding the 20016 Santa Rosa property, the property looked like this:



Transfer of title to the 20016 Santa Rosa property was done through a default judgment entered on October 30, 2015 by then-Chief Judge Robert J. Colombo, Jr. of the Wayne County Circuit Court. Exhibit 9 – 20016 Santa Rosa Default Judgment. The judgment adjudicated the 20016 Santa Rosa property to be a public nuisance and transferred title to the DLBA "in order to equitably defray the costs of abatement of the nuisance, actual attorney fees and court costs." Exhibit 9.

### j.  Ward's House, LLC

Ward's House, LLC alleges that the DLBA took title to its property at 6094 Evergreen Street on June 5, 2019. FAC, ECF No. 13, PageID.302, ¶ 7. At the time the Land Bank filed the nuisance abatement action regarding the 6094 Evergreen property, the property looked like this:



Transfer of title to the 6094 Evergreen property was done through a default judgment entered on May 17, 2019 by then-Chief Judge Timothy M. Kenny of the Wayne County Circuit Court. Exhibit 10 – 6094 Evergreen Default Judgment. The judgment adjudicated the property to be a public nuisance and awarded title to the 6094 Evergreen property to the DLBA "in order to equitably defray the costs of abatement of the nuisance, actual attorney fees and court costs." Exhibit 10.

### k. Tremayne Terrell

Tremayne Terrell, as personal representative of the estate of Mary Terrell, alleges that the DLBA took title to Mary Terrell's property at 17213 Forrer Street on or about May 16, 2017. FAC, ECF No. 13, PageID.303. At the time the Land Bank filed the nuisance abatement action regarding the 17213 Forrer property, the property looked like this:



Transfer of title to the 17213 Forrer property was done through a default judgment entered on May 16, 2017 by then-Chief Judge Robert J. Colombo, Jr. of the Wayne County Circuit Court. Exhibit 11 – 17213 Forrer Default Judgment. The judgment adjudicated the 17213 Forrer property to be a public nuisance and transferred title to the DLBA "in order to equitably defray the costs of abatement of the nuisance, actual attorney fees and court costs." Exhibit 11.

### l. Darnell Jackson

Darnell Jackson alleges that the DLBA took title to his property at 14294 Roselawn Street on April 12, 2024. FAC, ECF No. 13, PageID.304, ¶ 12. At the time the Land Bank filed the nuisance abatement action regarding the 14294 Roselawn property, the property looked like this:



Transfer of title to the 14294 Roselawn property was done through a default judgment entered on April 18, 2024 by Judge Leslie Kim Smith of the Wayne County Circuit Court. Exhibit 12 – 14294 Roselawn Default Judgment. The judgment adjudicated the 14294 Roselawn property to be a public nuisance. Because she found that "the Defendant Owner and Interest Holder has failed to abate the nuisance, and no other remedy being available," Judge Smith awarded title to the 14294 Roselawn property to the DLBA to "abate the nuisance as it deems appropriate, including by demolition or sale." Exhibit 12.

### m. Morgan, Tate & Brewer, LLC

Morgan, Tate & Brewer, LLC alleges that the DLBA took title to its property at 1421 Webb Street on or about December 19, 2018. FAC, ECF No. 13, PageID.305, ¶ 14. At the time the Lank Bank filed the nuisance abatement action regarding the 1421 Webb property, the property looked like this:



Transfer of title to the 1421 Webb property was done through a default judgment entered on December 19, 2018 by then-Chief Judge Robert Colombo, Jr. of the Wayne County Circuit Court. Exhibit 13 – 1421 Webb Judgment. The judgment adjudicated the 1421 Webb property to be a public nuisance and awarded title to the property to the DLBA, "in order to equitably defray the costs of abatement of the nuisance, actual attorney fees and court costs." Exhibit 13.

## II.    The Land Bank's Mission

The Land Bank is a public body corporate created under the Land Bank Fast Track Act, Mich. Comp. Laws § 124.751, *et seq*. The DLBA was created to assemble or dispose of public property, including tax reverted property, in a coordinated manner to foster the development of property and to promote economic growth in the City of Detroit. Under a Detroit City Council resolution adopted on February 13, 2014, the City of Detroit delegated to the DLBA the authority to "exercise the [police] power [of the City of Detroit] to abate public nuisances by pursuing any action legally available…including…civil litigation, to promote the public health, safety and welfare of the residents….." ECF No. 13-21, PageID.505.

Plaintiffs contend that the DLBA is failing to carry out its mission because it does not, itself, renovate properties it has acquired through nuisance abatement actions. The DLBA's mission is to return the city's blighted and vacant properties to productive use. However, it is not feasible for the DLBA to renovate all of the

16

properties it acquires. Consequently, the DLBA has designed programs to sell or otherwise transfer properties to people and other entities with incentives and binding agreements to renovate and maintain those properties.

The rehabilitation of one of the properties at issue in this lawsuit demonstrates that the DLBA is effectively carrying out its mission of returning the City's blighted properties to productive use. Morgan Tate & Brewer LLC alleges that it owned the residential property at 1421 Webb Street, and that title to the property was transferred to the DLBA on December 19, 2018. FAC, ECF No. 13, PageID.305, ¶ 14. As can be seen above, the property was in an advanced state of deterioration at the time the nuisance abatement lawsuit was filed. As of March 11, 2025, the property has been fully rehabilitated:



## LAW AND ARGUMENT

### I.    Standard of Review

Dismissal under Rule 12(b)(1) is appropriate where the court lacks subject matter jurisdiction over a plaintiff's claim. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of proving the existence of subject-matter jurisdiction. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). "Challenges to subject-matter jurisdiction fall into two general categories: 'facial attacks'—which argue that the pleading allegations are insufficient—and 'factual attacks'—which challenge the factual veracity of the allegations." *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 744-45 (E.D. Mich. 2017) (quoting *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "On a motion raising a facial attack, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Beck*,  273 F. Supp. 3d at 745 (quotation marks omitted). "In reviewing a motion raising a factual attack, the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. (quotation marks omitted). Where, as here, a defendant argues that the court lacks jurisdiction under the *Rooker-Feldman* doctrine, it is generally considered a facial attack on the court's jurisdiction. *Ratte v. Corrigan*, 989 F. Supp. 2d 550, 558 (E.D. Mich. 2013).

A court considering a motion to dismiss under Rule 12(b)(6) accepts all well-pled allegations as true, but need not accept as true any "legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations[.]" *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010). A court may also consider matters of public record without conversion to summary judgment. *See Amini v. Oberlin Coll.,* 259 F.3d 493, 502–503 (6th Cir. 2001). To survive a motion to dismiss, the complaint must be plausible on its face and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must include sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.    Compensation is Not Required Where a Municipality Acts to Abate a Nuisance.

Plaintiffs are absentee property owners who allowed their vacant residential properties to deteriorate to the extent they became a threat to the public. The DLBA initiated nuisance abatement lawsuits against the properties owned by Plaintiffs. Because Plaintiffs failed to contest those lawsuits, their properties were adjudicated to be public nuisances and title was transferred to the DLBA to equitably defray the cost of nuisance abatement.[2] Plaintiffs claim, under various legal theories, that they

---

[2] Plaintiffs allege that the Wayne County Circuit Court lacked authority to transfer title to the properties because Michigan law "restricts methods available for recovering expenses in a common-law public nuisance action to the collection

are owed compensation for the property taken from them. Plaintiffs' claims regarding compensation fail because each of their properties was adjudicated to be a public nuisance. "[W]hile conferring substantial protection on property owners, [the federal Takings Clause] does not eliminate the police power of the State to enact limitations on the use of their property." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1033 (1992) (Kennedy, J., concurring). "Long ago it was recognized that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,…and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491-92 (1987) (cleaned up). This is because "no individual has a right to use his property so as to create a nuisance or otherwise harm others, the State has not 'taken' anything when it asserts its power to enjoin the nuisance-like activity." *Id*. at 491 n. 20. Accordingly, compensation is not mandated when the government acts to abate a nuisance. *Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006). The same principle applies under the Takings Clause in Michigan Constitution, which is

---

procedures set forth in Chapter 60 of the Revised Judicature Act[.]" ECF No. 13, PageID.332, ¶ 87. Plaintiffs are incorrect, Mich. Comp. Laws § 600.2940(5) provides "Actions under this section are equitable in nature unless only money damages are claimed." Michigan courts have equitable power to fashion an appropriate remedy where no adequate remedy at law exists. *See Tkachik v. Mandeville*, 790 N.W.2d 260, 272 (Mich. 2010) (courts have "inherent authority to do equity where no adequate remedy at law exists.").

"interpreted coextensively" with the federal Takings Clause. *See Ypsilanti Fire Marshal v. Kircher*, 730 N.W.2d 481, 516 n. 22 (Mich. Ct. App. 2007) ("Because Ypsilanti was exercising its legitimate police power to abate the alleged nuisances on Kircher's property, no unconstitutional taking occurred.")

As Plaintiffs refer repeatedly to their alleged "equity" in their properties, after they were adjudicated to be public nuisances and transferred to the Land Bank, Plaintiffs appear to analogize their circumstances to property owners whose properties were foreclosed upon for non-payment of property taxes and subsequently sold at auction, without return to the property owner of the portion of the sale proceeds in excess of the tax debt. *See*, *e.g.*, FAC, ECF No. 13, PageID.354-55, ¶ 161 ("Michigan recognizes an additional, separate property right in the proceeds of any subsequent sale of real property that the government has taken."). The Michigan Supreme Court held that the retention of the sale proceeds from tax-foreclosed properties, in excess of the tax debt, violated the Michigan Constitution's Takings Clause in *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434 (Mich. 2020). The U.S. Supreme Court reached the same conclusion under the federal constitution in *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631 (2023).

The facts here are readily distinguishable from those at issue in *Rafaeli* and *Tyler*. Plaintiffs' properties were not foreclosed upon for failure to pay property taxes, the narrow circumstance under which Michigan and federal courts have held

21

that property owners are entitled to recover the surplus generated by subsequent sale. *See Rafaeli*, 952 N.W.2d at 466 ("We hold that plaintiffs, former property owners whose properties were foreclosed and sold to satisfy delinquent real-property taxes, have a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties."); *Tyler*, 598 U.S. at 639 ("The County had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of tax debt to confiscate more property than was due. By doing so, it effected a classic taking…"). Here, there is no "surplus" equity because Plaintiffs' properties were not foreclosed upon and sold for failure to satisfy a tax debt.[3] Even

---

[3] Examination of the historical underpinnings of foreclosure law further demonstrates *Rafaeli* and *Tyler* are distinguishable from this case. The principle that the owner of a property subject to foreclosure for failure to satisfy a debt retains an equitable interest in the property (equal to the difference between the debt owed and the value of the property) has deep roots in Anglo-American law. *See Hall v. Meisner*, 51 F.4th 185, 190-94 (6th Cir. 2022). Here, Plaintiffs' properties were not foreclosed upon for failure to satisfy a debt. There is no comparable tradition regarding the rights of property adjudicated to be a public nuisance. Rather, it is the principle that no compensation is owed where the government acts to abate a public nuisance that has deep roots in American legal history. *See*, *e.g.*, *Manhattan Mfg. & Fertilizer Co. v. Van Keuren*, 23 N.J. Eq. 251, 255 (N.J. Ch. 1872) ("Any citizen, acting either as an individual or as a public official under the orders of local or municipal authorities…may abate what the common law deemed a public nuisance. In abating it property may be destroyed and the owner deprived of it without trial, without notice, and without compensation. Such destruction for the public safety or health, is not a taking of private property for public use, without compensation or due process of law, in the sense of the Constitution. It is simply the prevention of noxious and unlawful use, and depends on the principles that every man must so use his property as not to injure his neighbor, and that the safety of the public is the paramount law."); *Coe v. Schultz*, 2 Abb. Pr. (n.s.) 193, 195; 47 Barb. 64 (N.Y. Gen.

assuming that there were such a surplus, Plaintiffs would have no right to it, as "[c]ourts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." *Keystone Bituminous Coal Ass'n*, 480 U.S. at 492 n. 22.

### III. This Court Lacks Jurisdiction to Review Judgments Entered by Michigan State Courts.

Because Plaintiffs' claims for compensation necessarily depend on a finding that their properties were not, in fact, public nuisances, Plaintiffs implicitly ask that this Court review the judgments entered against their properties by the Wayne County Circuit Court.[4] This Court lacks jurisdiction to entertain such a challenge under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine stands for the proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court. *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 492 (6th Cir. 2001). District courts lack jurisdiction to review state-court decisions "because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012). The Supreme Court has held that the *Rooker-Feldman* doctrine applies where "state-

---

Term 1866) ("No one has probably ever suggested that *Magna Charta* interfered with this process of summarily abating a public nuisance.").

[4] This Court may take judicial notice of the judgments entered by the Wayne County Circuit Court without converting this Motion to a motion for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

court losers complain[] of injuries caused by state-court judgments rendered before the district court proceedings commenced and invit[e] [the] district court to review and reject[] those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., 544 U.S. 280, 284 (2005). Application of the *Rooker-Feldman* doctrine is not limited to situations where a plaintiff explicitly asks a district court to review a state court decision; it also applies where a claim is "inextricably intertwined with the [state court's] decisions[.]" *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983). Courts in this Circuit "determine whether *Rooker-Feldman* bars a claim by looking to the 'source of the injury the plaintiff alleges in the federal complaint.'" *VanderKodde v. Mary Jane M. Elliott, P.C*., 951 F.3d 397, 402 (6th Cir. 2020) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). "If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *VanderKodde*, 951 F.3d at 402. "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.*

This Court lacks jurisdiction over Plaintiffs' claims because the injuries that Plaintiffs allegedly suffered were caused by the state-court judgments adjudicating their properties to be nuisances and transferring title to the Land Bank. Plaintiffs do not, and could not, allege that their injuries stem from some other source. As set forth above, a municipality has not committed a compensable taking when it acts to

abate a nuisance. As the state-court judgments, which adjudicated Plaintiffs' properties as public nuisances and transferred title to the DLBA are the source of Plaintiffs' alleged injuries, this Court lacks jurisdiction under *Rooker-Feldman*. Likewise, while Plaintiffs attempt to minimize the role of the state-court judgments in the Complaint, they conspicuously fail to identify any other source of their alleged injuries.

### IV. Plaintiffs' Claims are Barred by Res Judicata and/or Collateral Estoppel and Represent an Impermissible Collateral Attack.

#### a. Plaintiffs' Claims are Barred by Res Judicata and/or Collateral Estoppel.

Plaintiffs' claims are barred by res judicata and collateral estoppel because the Wayne County Circuit Court has already entered judgment adjudicating Plaintiffs' properties to be public nuisances, and because Plaintiffs could have raised these claims in Wayne County Circuit Court, but did not.

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007). Federal courts look to the law of the state in which the state court judgment was rendered to determine its preclusive effect on claims asserted in federal courts. *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 80-85 (1984). Under Michigan law, res judicata precludes a later claim if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and

(3) the matter in the second case was, or could have been, resolved in the first[.]" *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc*., 765 F.3d 625, 630 (6th Cir. 2014) (quoting *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004)). Michigan's "doctrine of res judicata will [also] operate to bar a subsequent claim that could have been raised as a counterclaim in the first action." *Kircher v. City of Ypsilanti*, 809 F. App'x. 284, 298 (6th Cir. 2020) (quoting *Stanton v. Auto Owners Ins. Co*., 2016 WL 6269614, at *5 (Mich. Ct. App. Oct. 25, 2016)). The elements required for collateral estoppel are "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co*., 677 N.W.2d 843, 845-46 (Mich. 2004). Under Michigan law, "[a] default judgment is treated the same as a litigated judgment for purposes of res judicata and is considered a decision on the merits." *Richards v. Tibaldi*, 726 N.W.2d 770, 776 (Mich. Ct. App. 2006). A default judgment is also considered a final decision on the merits for purposes of collateral estoppel. *Rohe Scientific v. Nat'l Bank of Detroit*, 350 N.W.2d 280, 282 (Mich. Ct. App. 1984). All of the elements for application of res judicata and collateral estoppel are present here. The Wayne County Circuit Court cases were decided on the merits, involved the same parties, and involved, or could have involved, the claims Plaintiffs assert here.

26

The Sixth Circuit addressed the application of res judicata in similar circumstances in *Kircher v. City of Ypsilanti*, 809 F. App'x. 284 (6th Cir. 2020). In *Kircher*, the Sixth Circuit held that a plaintiff could not pursue takings claims arising out of a nuisance abatement action, because those claims could have been raised in the underlying nuisance abatement action, but were not. *Id.* at 299-300; *see also*, *Kircher v. Charter Twp. of Ypsilanti*, No. 20-1923, 2021 WL 11097070, at *4 (6th Cir. Nov. 15, 2021) (finding the plaintiff's "complaint barred by res judicata because: (1) the state court nuisance-abatement action was adjudicated on the merits; (2) both actions involve the same parties or their privies; and (3) the nuisance-abatement action and this federal civil action both stem from the same transaction or occurrence—namely, [the property at issue] being declared a public nuisance, placed into receivership, foreclosed upon, and eventually sold at auction (and the constitutional import of those actions)[.]"). The same result is required here.

### b. Plaintiffs' Claims Represent a Collateral Attack on the State-Court Judgments.

A collateral attack is "[a]n attack on a judgment *in a proceeding other than a direct appeal*." *United States v. Asakevich*, 810 F.3d 418, 423 (6th Cir. 2016) (alterations and emphasis in original) (quoting Black's Law Dictionary 318 (10th ed. 2014)). A collateral attack "seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." *Pratt v. Ventas, Inc*., 365 F.3d 514, 519 (6th Cir. 2004). A collateral attack "exist[s] where the relief sought would, in some

way, overrule another court's ruling." *Republic Bldg. Co., Inc. v. Charter Twp. Of Clinton, Mich.*, 81 F.4th 662, 666 (6th Cir. 2023). Absent allegations that the original court lacked jurisdiction over the case, "a court should decline to entertain a collateral attack on a previous, valid judgment." *Id.*

Each of the Plaintiffs' properties have been adjudicated to be public nuisances and transferred to the DLBA to equitably defray the costs of nuisance abatement by the Wayne County Circuit Court. Plaintiffs may not relitigate those issues through this lawsuit. *See Crow v. City of Springfield, Ohio*, 15 F. App'x. 219, 223-24 (6th Cir. 2001) (finding that plaintiff who failed to pursue state-law administrative challenge to designation of property as nuisance by municipality could not relitigate issue through § 1983 takings claim).

**V.  The Claims of Some Plaintiffs are Time-Barred.**

"The Supreme Court has held that § 1983 claims are best characterized as tort actions for the recovery of damages for personal injury and that federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). In Michigan, the statute of limitations is the "three-year limitations period for personal injury claims." *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (citing Mich. Comp. Laws § 600.5805). The statute of limitations for claims under the Michigan Constitution is six years. *See Schafer v. Kent Cnty.*, — N.W.3d —,

28

2024 WL 3573500, at *3 n. 9 (Mich. 2024) (citing Mich. Comp. Laws § 600.5813). Because Plaintiffs seek amounts generated by the sale of their properties, which in some cases occurred years after the property was transferred to the DLBA, (*i.e.*, damages) their unjust enrichment claim is subject to a three-year statute of limitations. *See* FAC, ECF No. 13, PageID.160, ¶ 185; *Eggelston v. Twentieth Century Fox Film Corp.*, 696 F. Supp. 3d 295, 302 (E.D. Mich. 2023) (citing Mich. Comp. Laws § 600.5805).[5]

The claims asserted by Morgan, Tate & Brewer, LLC,  Sheila Todd, Ruby Washington, Ward's House, LLC, and Tremayne Terrell are barred, in whole or in part, by the statute of limitations. Morgan, Tate & Brewer, LLC alleges that the DLBA took title to its property on or about December 19, 2018. ECF No. 13, PageID.305, ¶ 14. Sheila Todd alleges that the DLBA took title to her property on or about July 17, 2015. *Id.*, PageID.348, ¶ 129. Ruby Washington alleges that the DLBA took title to her property on October 10, 2015. *Id.*, PageID.301, ¶ 5. Ward's House, LLC alleges that the DLBA took title to its property on June 5, 2019. *Id.*, PageID.302, ¶ 7. Tremayne Terrell alleges the DLBA took title to property belonging to his mother's estate on or about May 16, 2017. *Id.*, PageID.303, ¶ 9. Even assuming that Plaintiffs had some right to compensation following the

---

[5] Alternatively, to the extent the Court determines that Plaintiffs' unjust enrichment claim is equitable in nature, it is subject to a six-year statute of limitations. *Eggelston*, 696 F. Supp. 3d at 301 (citing Mich. Comp. Laws § 600.5807(9)).

adjudication of their properties as public nuisances, that right would have accrued at the time title was transferred to the DLBA. *See Knick v. Twp. of Scott, PA*, 588 U.S. 180, 190 (2019) ("the act of taking is the event which gives rise to the claim for compensation.") (quotation marks omitted). The claims asserted by Morgan, Tate & Brewer, LLC and Sheila Todd accrued more than six years before the initial complaint was filed on February 1, 2025 and are time-barred. The claims asserted by Ruby Washington and Tremayne Terrell accrued more than six years before the First Amended Complaint was filed on May 11, 2025 and are time-barred. The claims asserted by Ward's House, LLC accrued more than three years before the First Amended Complaint was filed on May 11, 2025. Accordingly, the § 1983 claims and unjust enrichment claim asserted by Ward's House, LLC are time-barred.

## VI.   Plaintiffs' § 1983 Claims (Counts I-II, V) Fail.

Municipal entities may be subject to liability for constitutional violations under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). To prevail on a § 1983 *Monell* claim against a municipality, "the plaintiffs must show (1) that they suffered a constitutional violation and (2) that a municipal policy or custom directly caused the violation." *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017).

### a.  Plaintiffs' § 1983 Claims under the Fifth and Eighth Amendments (Counts I-II) fail.

### i. Plaintiffs Have Failed to Adequately Allege that they Suffered a Constitutional Violation.

Plaintiffs have failed to allege that they suffered constitutional violations because the only harm they allege is that Defendants failed to pay them compensation after their properties were adjudicated to be public nuisances and title was transferred to the DLBA by judgments entered in the Wayne County Circuit Court. *See*, *e.g.*, FAC, ECF No. 13, PageID.345, ¶ 109-13. As set forth above, "[c]ourts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." *Keystone Bituminous Coal Ass'n*, 480 U.S. at 492 n. 22.

Plaintiffs have also failed to adequately allege that they were subject to an impermissibly excessive fine. To establish an excessive fines claim, a plaintiff must show that the fine was imposed as "punishment for some offense." *Austin v. United States*, 509 U.S. 602, 622 (1993). Fines are punitive where they act as a deterrent. *U.S. v. Bajakajian*, 524 U.S. 321, 329 (1998). Where a penalty "provides a reasonable form of liquidated damages to the government [it] is thus a remedial sanction because it compensates the government for lost revenues." *Id*. (quoting *One Lot Emeral Cut Stones v. United States*, 409 U.S. 232 (1972) (*per curiam*)) (quotation marks omitted).

Plaintiffs' excessive fines claims fail because the transfer of title to their properties was not punishment for an offense. Plaintiffs were not charged with any

offense. The Land Bank filed lawsuits alleging that Plaintiffs' properties were public nuisances and Plaintiffs failed to contest those lawsuits, resulting in default judgments that transferred title to their properties to the Land Bank. Nor was the "fine" imposed punitive. Each judgment provides that title to the property was transferred to the Land Bank to compensate the Land Bank for the costs of bringing the lawsuit and abating the nuisance. *See, e.g.*, Exhibit 3 (transferring title to the property "as compensation and in order to equitably defray the costs of abatement of the nuisance, actual attorney fees and court costs.").

> ii.    **Plaintiffs Have Failed to Adequately Allege that Defendants Caused Their Alleged Injuries.**

Plaintiffs allege that the Detroit City Council resolution, which authorizes the DLBA to pursue nuisance abatement actions on behalf of the City and to seek transfer of title to the property, was the "moving force" behind Defendants' alleged violations of Plaintiffs' rights under the Fifth and Eighth Amendments. FAC, ECF No. 13, PageID.350, 352, ¶¶ 140, 152. These allegations are insufficient because (1) the City Council resolution merely authorizes the Land Bank to pursue nuisance abatement litigation in the City's name and to request certain relief; and (2) the exercise of independent judgment by the Wayne County Circuit Court judges in adjudicating each property to be a nuisance and awarding title to the DLBA acts as a superseding cause, which cuts off any liability the Defendants might bear.

In order for Plaintiffs to prevail on their claims under 42 U.S.C. § 1983, they must show that an "action pursuant to official municipal policy of some nature *caused* a constitutional tort." *Collins v. Harker Heights*, 503 U.S. 115, 121 (1992) (emphasis added). Likewise, for a municipality to be liable under § 1983, the identified policy or custom must be the "moving force" of the constitutional violation. *Monell*, 436 U.S. at 690-95. "At bottom, this is a causation inquiry, requiring the plaintiff to show that it was the defendant's custom or policy that led to the complained of injury." *Powers v. Hamilton Cnty. Pub. Defender Com'n*, 501 F.3d 592, 608 (6th Cir. 2007). "Like a tort plaintiff, a § 1983 plaintiff must establish both causation in fact and proximate causation." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 185 (3d Cir. 2011)). Cause in fact is generally determined on a but-for standard. *Powers*, 501 F.3d at 608. "Proximate-cause analysis is a kind of line-drawing exercise in which [courts] ask whether there are any policy or practical reasons that militate against holding a defendant liable even though that defendant is a but-for cause of the plaintiff's injury." *Id*. at 609. The actions of a judge may "sever the chain of causation between a plaintiff's injury and a defendant's wrongdoing." *Id*. "Thus, even if it is foreseeable that a defendant's conduct will lead to the complained of harm, a defendant may be able to avoid § 1983 liability by pointing to the intervening action of a judge as the proximate cause of the plaintiff's injury." *Id*. at 610. In the

absence of allegations that the Defendants misrepresented material facts to the court (which Plaintiffs do not and could not assert here)[6] the exercise of independent judgment by a judge is a superseding cause that breaks the chain of causation and relieves the defendant of liability, even if the order or judgment at issue is legally defective. *Id*. at 610-11.

Plaintiffs cannot demonstrate that any action by Defendants pursuant to a municipal policy was the proximate cause of any constitutional tort, because their alleged injuries were caused by judgments entered by the Wayne County Circuit Court, not Defendants' initiation of nuisance abatement lawsuits or the City Council

---

[6] In their First Amended Complaint, Plaintiffs allege that the DLBA made misleading arguments about their plans for the properties after entry of judgment. *See* FAC, ECF No. 13, PageID.316-17, ¶¶ 44-48. First, the arguments at issue are not actually misleading. Plaintiffs allege that the DLBA misleadingly argues it intends to demolish the structures on the lot in question. But the cited section of the DLBA brief in support of its motion for entry of a default judgment asks that the court transfer title to the Land Bank "as partial compensation for the costs incurred in abating the nuisance *or* for demolition." ECF No. 13-22, PageID.513 (emphasis added). Second, any arguments made by the DLBA regarding its future plans for a property are not material facts regarding the adjudication of a property as a nuisance. *See Derderian v. Genesys Health Care Sys.,* 689 N.W.2d 145, 157 (Mich. Ct. App. 2004) ("[T]he misrepresentation must relate to a past or existing fact and not be promissory in nature."). The arguments cited by Plaintiffs are clearly distinguishable from the sorts of egregious factual misrepresentation courts have found sufficient to create liability under § 1983, despite intervening exercise of judicial or prosecutorial judgment. *See*, *e.g.*, *Jones v. City of Chicago*, 856 F.2d 985, 988-94 (7th Cir. 1988) (finding that defendant police officers who knowingly lied about identification of the plaintiff by a crime victim and intentionally withheld exculpatory evidence had proximately caused the plaintiff to be prosecuted in violation of his constitutional rights, despite intervening exercise of prosecutorial discretion.).

resolution. *Id*.; *see also, Kendall v. Urban League of Flint*, 612 F. Supp. 2d 871, 880 (E.D. Mich. 2009) ("superseding causes relieve defendants of section 1983 liability") (quoting *Jeffries v. Harleston*, 52 F.3d 9, 14 (2d Cir. 1995)); *Sheppard v. E.W. Scripps Co*., 421 F.2d 555, 556-58 (6th Cir. 1970) (holding that § 1983 claim against publisher failed where any constitutional deprivation was caused by the manner in which a judge conducted a criminal trial, thereby breaking the chain of causation.); *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (holding that § 1983 claim against police officers related to allegedly unlawful search and seizure failed because "[t]he state trial court's exercise of independent judgment in deciding not to suppress the evidence, though later ruled to be erroneous, broke the chain of causation for purposes of § 1983 liability[.]"); *Egervary v. Young*, 366 F.3d 238, 250-51 (3d Cir. 2004) (holding that where a "judicial officer is provided with the appropriate facts to adjudicate the proceeding" that exercise of independent judgment, even if legally erroneous, "must be held to be a superseding cause, breaking the chain of causation for purposes of § 1983…liability."); *Mayor of the City of Lansing v. Knights of the Ku Klux Klan*, 564 N.W.2d 177, 179-83 (Mich. Ct. App. 1997) (holding that seeking entry of a court order does not cause an injury cognizable under § 1983 unless the party seeking the order engaged in wrongdoing by supplying false and misleading information).

### b.  Plaintiffs' § 1983 Due Process Claim (Count V) Fails as a Matter of Law.

In order to state a valid procedural due process claim, a plaintiff must allege "(1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process." *Fields v. Henry Cnty., Tenn.*, 701 F.3d 180, 185 (6th Cir. 2012). Plaintiffs allege that they have "cognizable property interests in the proceeds generated when Defendant DLBA sells their real property at public auctions[,]" which survives the transfer of title to the Land Bank. FAC, ECF No. 13, PageID.357, ¶ 173. Plaintiffs allege that the Defendants violated their due process rights by selling their properties and retaining the proceeds, without notifying Plaintiffs of the sale, or providing a process to claim the auction proceeds. *Id*., PageID.357-58, ¶ 174. This claim fails because Defendants had no obligation to pay compensation to Plaintiffs. *Keystone Bituminous Coal Ass'n*, 480 U.S. at 492 n. 22. And, Plaintiffs had no interest in the properties after title was transferred to the DLBA, which occurred prior to any sale. Plaintiffs also suggest that Defendants violated their due process rights by not "affording Plaintiffs any opportunity to challenge the reasonableness or amount of its claimed attorney fees and/or abatement expenses[.]" FAC, ECF No. 13, PageID.358, ¶ 176. But Plaintiffs had the opportunity to make that challenge (and to challenge the DLBA's allegations that their property was a public nuisance) in the nuisance abatement action—Plaintiffs failed to do so.

36

### c. Plaintiffs' *Monell* Allegations are Insufficient.

Aside from the causation issues discussed above, each of Plaintiffs' § 1983 claims also fails as a matter of law because their allegations fails to satisfy the *Monell* requirements for imposing liability on a municipal entity. Under § 1983, municipal entities "are responsible only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quotation marks omitted; emphasis in original). "They are not vicariously liable under § 1983 for their employee's actions." *Id*. To state a cause of action against a municipal entity, a plaintiff must allege "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691. A plaintiff must "identify the policy, connect the policy to the [municipal entity] itself and show that the particular injury was incurred because of the execution of that policy." *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019). Stated differently, the "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). There are four ways in which a plaintiff may establish the existence of an unlawful municipal policy: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or

acquiescence to federal rights violations." *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005).

Here, Plaintiffs allege that a February 7, 2014 Detroit City Council resolution (the "City Council Resolution") is the 'moving force' behind their injuries. FAC, ECF No. 13, PageID.330. But Plaintiffs' alleged injuries were not caused because of the execution of the City Council Resolution—they were caused because Plaintiffs failed to appear in the nuisance abatement actions filed against them and the default judgments entered against them adjudicated their properties to be a public nuisance and transferred title to the DLBA. Plaintiffs reason that, because Mich. Comp. Laws § 600.2940 limits the remedies available in a common-law nuisance abatement action, the City Council Resolution is "the only potential legal basis" for entry of judgment transferring title of property to the DLBA. FAC, ECF No. 13, PageID.333, ¶ 89. As noted above, Plaintiffs are incorrect that the judgments entered by the Wayne County Circuit Court are inconsistent with Mich. Comp. Laws § 600.2940. Mich. Comp. Laws § 600.2940(5) states that "Actions under this section are equitable in nature unless only money damages are claimed." Furthermore, Plaintiffs do not allege that the City Council Resolution is facially unlawful. Nor could they, given that the City Council Resolution simply authorizes the DLBA to exercise the City's police power by filing civil nuisance abatement actions. *See* City Council Resolution, ECF No. 13-21, PageID.505; *Rental Prop. Owners Ass'n of*

*Kent Cnty. v. City of Grand Rapids*, 566 N.W.2d 514, 518 (Mich. 1997) ("It is well established that nuisance abatement, as a means to promote public health, safety and welfare is a valid goal of municipal police power."). "Where the identified policy is itself facially lawful, the plaintiff must demonstrate that the municipal action was taken with 'deliberate indifference' as to the known or obvious consequences." *Winkler v. Madison Cnty.*, 893 F.3d 877, 901 (6th Cir. 2018) (quotation marks omitted). Plaintiffs do not allege that Defendants acted with deliberate indifference to their constitutional rights. Nor could they, given that the constitution does not mandate compensation when the government acts to abate a nuisance. *Keystone Bituminous Coal Ass'n*, 480 U.S. at 492 n. 22.

## VII.   Plaintiffs' Claims under the Michigan Constitution (Counts III, VI) Fail.
### a.   Plaintiffs Fail to Allege a Viable Takings Claim.

Plaintiffs' takings claim under the Michigan Constitution fails for the same reason as the federal claim—no compensation is owed to a property owner where a municipality acts to abate a nuisance. *Keystone Bituminous Coal Ass'n*, 480 U.S. at 492 n. 22. Additionally, Plaintiffs' Michigan takings claim appears to assume the underlying court actions were condemnation actions, as they allege that Plaintiffs' properties were taken "for the purpose of eradicating blight," a circumstance that would require compensation. ECF No. 13, PageID.354, ¶ 160. Plaintiffs' properties were not condemned for the purpose of eradicating blight—they were adjudicated to

be public nuisances and title was transferred to the DLBA to equitably defray the costs associated with nuisance abatement.

### b.  Plaintiffs Fail to Allege a Viable Excessive Fines Claim.

Plaintiffs allege that failure to pay compensation after their properties were adjudicated to be public nuisances and title was transferred to the DLBA violated Article I, § 16 of the Michigan Constitution, which provides "excessive fines shall not be imposed." ECF No. 13, PageID.359, ¶ 180. This claim fails for the same reasons as the Eighth Amendment excessive fines claim. Additionally, Michigan courts have held that the Michigan Excessive Fines Clause applies only "to forfeitures associated with criminal activity." *Proctor v. Saginaw*, 985 N.W.2d 193, 214 (Mich. Ct. App. 2022), *vacated in part on other grounds* 12 N.W.3d 182 (Mem.) (2024). Plaintiffs do not, and could not, allege that transfer of title to their properties were forfeitures associated with criminal activity.

### c. Defendants are Immune to Damages on the Michigan Constitutional Claims.

Even assuming that Plaintiffs have stated valid claims under the Michigan Constitution, the Defendants are immune to damages on those claims. *Jones v. Powell*, 612 N.W.2d 423, 426-27 (Mich. 2000) (holding that Michigan law provides "no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual government employee[,]" because municipal entities are subject to suit under 42 U.S.C. § 1983.);

*Wells ex rel. Bankr. Estate of Arnone-Doran v. City of Grosse Pointe Farms*, 581 F. App'x. 469, 478 (6th Cir. 2014) (Citing *Jones* and noting Michigan law provides "no inferred damages remedy for violations of Michigan Constitution against municipalities[.]").

### VIII. Plaintiffs' Claim for Compensation "Arising Directly under the Fifth Amendment" (Count IV) Fails as a Matter of Law.

In the alternative to their § 1983 and state-law takings claims, Plaintiffs allege a takings claim "arising directly under the Fifth Amendment[.]" FAC, ECF No. 13, PageID.357. This claim fails as a matter of law for two independent reasons. First, no court in this Circuit has held that a plaintiff may assert a takings claim arising directly under the Fifth Amendment. *See*, *e.g.*, *Foster v. Michigan*, 573 F. App'x. 377, 391 (6th Cir. 2014) ("To the extent Appellants attempt to assert direct constitutional claims, they fail; we have long held that § 1983 provides the exclusive remedy for constitutional violations."). The Supreme Court considered the issue in *Devillier v. Texas*, 601 U.S. 285 (2024), but expressly declined to address whether a plaintiff could assert a takings claim directly under the Fifth Amendment because the plaintiff at issue had a state-law remedy. *Id*. at 292-93. Second, this case does not present the narrow circumstance where a direct cause of action might become necessary. The issue was relevant in *Devillier* because the plaintiff was suing the State of Texas, which is immune to suit under § 1983. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65-66 (1989). Here, Plaintiffs are suing municipal entities,

which are subject to suit under § 1983. *Monell*, 436 U.S. at 694. And, Plaintiffs assert state-law takings claims in addition to their federal claims. This is not a case where Plaintiffs might be left without a procedural mechanism to pursue a remedy for their alleged injuries. *See Bowles v. Sabree*, 121 F.4th 539, 555 n. 6 (6th Cir. 2024) (noting that *Devillier* has no application to a suit where the plaintiff "sued Wayne County, which does not have sovereign immunity and which can be sued under § 1983.").

### IX. Plaintiffs' Unjust Enrichment Claim (Count VII) Fails.
#### a. The Unjust Enrichment Claim Fails as a Matter of Law.

In order to state a valid unjust enrichment claim, a plaintiff must allege "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grille Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003). Plaintiffs have failed to adequately allege either element. Plaintiffs allege that the Land Bank was unjustly enriched when it sold Plaintiffs' properties and failed to pay some portion of the sale proceeds to Plaintiffs after it sold their properties. FAC, ECF No. 13, PageID.360, ¶ 184.

Plaintiffs have failed to allege that the Land Bank received a benefit from Plaintiffs. Rather, they allege that the Land Bank received money from third parties from the sale of Plaintiffs' properties after title was transferred to the Land Bank. *Id.*, ¶ 146. In other words, Plaintiffs do not claim they were entitled to the value of

the property at the time title was transferred to the Land Bank, they claim they are entitled to the proceeds of an auction held at some later date.

Regarding the second element, Plaintiffs allege that "inequity" resulted from the Land Bank's retention of these sale proceeds, but do not explain why. *Id.*, ¶ 189. No inequity could have resulted because Plaintiffs' properties were adjudicated to be public nuisances and title to the properties was transferred to the DLBA to defray the costs of bringing the nuisance abatement action and abating the nuisance. No compensation is owed to a property owner where a municipality acts to abate a nuisance. *Keystone Bituminous Coal Ass'n*, 480 U.S. at 492 n. 22.

### b.  The Unjust Enrichment Claim is a Tort Claim to Which the DLBA is Immune.

Michigan's Governmental Tort Liability Act, Mich. Comp. Laws § 691.1401, *et seq.* ("GTLA"), provides that "all government agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function." *Lucas v. Monroe County*, 203 F.3d 964, 978 n. 8 (6th Cir. 2000) (quoting Mich. Comp. Laws § 691.1407). The GTLA applies to municipal entities like the Land Bank. *Buhl v. City of Oak Park*, 968 N.W.2d 348, 352 (Mich. 2021). The Michigan Supreme Court has held that the GTLA does not bar an unjust enrichment claim where the plaintiff seeks only the return of a benefit the plaintiff has conferred on the defendant. *Wright v. Genesee Cnty.*, 934 N.W.2d 805, 811-12 (Mich. 2019). The Michigan Supreme Court drew a distinction between

claims seeking restitution and claims seeking damages. *Id*. at 809-10. Where a plaintiff seeks restitution, *e.g.*, the return of some benefit provided to the defendant by the plaintiff, the GTLA does not apply. *Id*. at 812. Where an unjust enrichment claim is a tort claim "in substance" because it seeks "damages for an injury caused by the breach of a legal duty" the protections of the GTLA apply. *Id*. at 810, 812. Here, Plaintiffs do not seek restitution for a benefit they provided to the DLBA (*i.e.*, the value of their property at the time title was transferred) they seek compensatory damages (*i.e.*, the money paid to the DLBA by a third party at the time the property was sold at auction, which in many instances occurred years after title was transferred to the DLBA[7]), based on the DLBA's alleged breach of its legal duty to pay those proceeds to plaintiffs. Defendants are immune to damages on this claim under the GTLA.

## CONCLUSION

For the foregoing reasons Defendants respectfully ask this Court to dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice, and grant Defendants any further relief the Court deems just.

---

[7] For example, the judgment transferring title to Sheila Todd's property was entered on July 17, 2015. Exhibit 4. Ms. Todd alleges that her property was sold at auction on August 15, 2024. ECF No. 13, PageID.305, ¶ 15. Plaintiffs can hardly be said to be seeking restitution where the amount they seek to recover was generated nearly a decade after the "benefit" was conferred on the DLBA.

Dated: June 17, 2025

Respectfully submitted,

*/s/ David H. Fink*
David H. Fink (P28235)
Nathan J. Fink (P75185)
Philip D.W. Miller (P85277)
David A. Bergh (P83696)
FINK BRESSACK
500 Griswold St., Suite 2400
Detroit, MI 48226
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
pmiller@finkbressack.com
dbergh@finkbressack.com

*Counsel for Defendants City of Detroit and the Detroit Land Bank Authority*


Conrad L. Mallett, Jr. (P30806)
Jason H. Harrison (P62765)
CITY OF DETROIT LAW DEPARTMENT
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 500
Detroit, MI 48226
Tel: (313) 224-4550
conrad.mallett@detroitmi.gov
jason.harrison@detroitmi.gov

*Counsel for Defendant City of Detroit*