UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KASSANDRA LUDINGTON, et al.,

                Plaintiffs,

                              Case No. 2:25-cv-10307

v.

                              Hon. Jonathan J.C. Grey

CITY OF DETROIT, a Michigan Municipal
Corporation, and THE DETROIT LAND              Mag. Judge David R. Grand
BANK AUTHORITY, a public body
corporate,

                Defendants.

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT UNDER RULES
12(b)(1) AND 12(b)(6)**

i

# **TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................. iii

ARGUMENT .........................................................................................................1

   I.   Plaintiffs Have Failed to Allege a Compensable Taking. .............................1

   II.  The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claims. ..............................7

   III.  At a Minimum, Plaintiffs' Claims are Barred by Collateral Estoppel...........9

   IV.  Certain Plaintiffs' Claims are Time-Barred.................................................10

   V.  Plaintiffs' § 1983 Claims Fail....................................................................12

   VI.  Plaintiffs' *Monell* Allegations are Insufficient...........................................14

   VII.  Plaintiffs' State Law Claims Fail. ..............................................................15

   VIII. Plaintiffs' Direct Fifth Amendment Claim Fails. .......................................16

CONCLUSION ....................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bertwistle v. Goodrich*,
   19 N.W. 143 (Mich. 1884) ...................................................................6

*Cedar Point Nursery v. Hassid*,
   594 U.S. 139 (2021) .......................................................................4, 9

*Cheboygan County Construction Code Department v. Burke*,
   384 N.W.2d 77 (Mich. Ct. App. 1985)...............................................5

*Currithers v. FedEx Ground Package Sys., Inc.*,
   No. 04-10055, 2012 WL 458466 (E.D. Mich. Feb. 13, 2012)............12

*Dist. of Columbia Court of Appeals v. Feldman*,
   460 U.S. 462 (1983) ..........................................................................7

*Egervary v. Young*,
   366 F.3d 238 (3d Cir. 2004) ...........................................................13

*Electro-Techs v. H.F. Campbell Co.*,
   445 N.W.2d 61 (Mich. 1989) ...........................................................16

*Embassy Realty Inv. Inc. v. City of Cleveland*,
   572 F. Appx. 339 (6th Cir. 2014) ......................................................2

*Fox v. County of Saginaw*,
   No. 19-CV-11887, 2021 WL 120855 (E.D. Mich. Jan. 13, 2021)........9

*Grover v. Huckins*,
   26 Mich. 476 (1873) ..........................................................................6

*Harrison v. Montgomery Cnty.*,
   997 F.3d 643 (6th Cir. 2021) ...........................................................10

*Hohenberg v. Shelby County*,
   68 F.4th 336 (6th Cir. 2023) ..............................................................9

*John R. Sand & Gravel Co. v. United States*,
   60 Fed. Cl. 230 (2004).......................................................................4

*Jones v. Powell*,
   612 N.W.2d 423 (Mich. 2000) .........................................................16

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
   480 U.S. 470 (1987) .......................................................................2, 3

*Lucas v. South Carolina Coastal Council*,
   505 U.S. 1003 (1992) ........................................................................4

*Monat v. State Farm Ins. Co.*,
   677 N.W.2d 843 (Mich. 2004) ...........................................................9

*Powers v. Hamilton Public Defender Commission*,
   501 F.3d 592 (6th Cir. 2007)...........................................................13

*Preseault v. United States*,
    100 F.3d 1525 (Fed. Cir. 1996) .............................................................3
*Skinner v. Switzer*,
    562 U.S. 521 (2011) ............................................................................7
*Welch v. Stowell*,
    2 Doug. 332 (Mich. 1846) ..................................................................6
*Wings as Eagles Deliverance Ministry v. City of Detroit*,
    No. 20-13186, 2022 WL 220643 (E.D. Mich. Jan. 25, 2022)............................7
*Ypsilanti Charter Twp. v. Kircher*,
    761 N.W.2d 761 (Mich. Ct. App. 2008)..................................... 4, 5, 15
*Ypsilanti Fire Marshal v. Kircher*,
    730 N.W.2d 481 (Mich. Ct. App. 2007)..................................... 1, 5, 15

**Statutes**

Comp. Laws § 600.5852 .........................................................................11
Mich. Comp. Laws § 600.6044.................................................................5

## ARGUMENT

### I.  Plaintiffs Have Failed to Allege a Compensable Taking.

Each of the properties for which Plaintiffs assert takings claims were adjudicated to be a public nuisance. *See* Motion to Dismiss, ECF No. 19, PageID.562-75. Because the absentee owners of these vacant houses failed to respond to, or contest, the nuisance abatement lawsuits filed against their properties, the only remedy available to the Wayne County Circuit Court to abate the nuisance was entry of a judgment transferring title of the property to the Detroit Land Bank Authority ("DLBA" or the "Land Bank"). *See e.g.,* ECF No. 19-1, PageID.607 ("For the reasons stated in Plaintiffs' Complaint, and because the Defendant Owner and Interest Holder has failed to abate the nuisance, and no other remedy being available, title to the Property is hereby transferred to Plaintiff Detroit Land Bank Authority").

Plaintiffs claim that the DLBA's retention of a supposed surplus (*i.e.*, the difference between the unquantified abatement expenses which had, and would be, incurred by the DLBA for a property and any sale proceeds received by the DLBA for that property) constituted a taking. But Plaintiffs have failed to allege a compensable taking because both Michigan and federal courts "have consistently held that a [s]tate need not provide compensation when it diminishes or destroys the value of property by stopping illegal activity or abating a public nuisance." *Ypsilanti Fire Marshal v. Kircher*, 730 N.W.2d 481, 554 n. 22 (Mich. Ct. App. 2007) (*quoting*

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 492 n. 22 (1987));
*see also Embassy Realty Inv. Inc. v. City of Cleveland*, 572 F. Appx. 339, 344 (6th
Cir. 2014) ("The United States and Ohio Constitutions prohibit the taking of private
property for public use without just compensation. However, such compensation is
not mandated when the state legitimately exercises police power to abate a property
nuisance."). Plaintiffs raise several arguments as to why this exception does not bar
their claims for compensation. None has merit.

First, Plaintiffs argue that the DLBA did not actually abate any nuisance. This
misconstrues both the Land Bank's Nuisance Abatement Program ("NAP") and the
judgments entered by the Wayne County Circuit Court. The DLBA lacks the
resources to rehabilitate houses itself. Accordingly, the goal of the NAP is to either
(1) require the owners of vacant, blighted houses to rehabilitate them; or (2) get
vacant, blighted houses out of the hands of absentee owners who have left them to
deteriorate and into the hands of parties who are able to rehabilitate the houses to
make them inhabitable. This policy is reflected in the judgments, the majority of
which state that the "Land Bank is hereby granted the right to enter the Property and
abate the nuisance *as it deems appropriate*, including by demolition or *sale*."[1] *See,
e.g.*, ECF No. 19-1, PageID.607 (emphasis added). As Plaintiffs allege, the DLBA

---

[1] The few judgments that do not contain this language do not contain any language
that constrains how the DLBA is to abate the nuisance. *See, e.g.*, ECF No. 19-13.

has sold (or attempted to sell) each of the properties at issue in this case. *See* First Amended Complaint ("FAC"), ECF No. 13, PageID.317, ¶ 48. The judgments entered by the Wayne County Circuit Court "diminishe[d] or destroy[ed]" the value of the properties in connection with the abatement of a nuisance and therefore fall squarely within the nuisance exception.

Second, Plaintiffs argue that the nuisance exception applies only to regulatory takings, not physical takings. While most cases involving the nuisance exception arise in the context of a regulatory taking, the exception applies with equal force to physical takings. The nuisance exception exists because "all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community[.]" *DeBenedictis*, 480 U.S. at 491-92; *see also Preseault v. United States*, 100 F.3d 1525, 1539 (Fed. Cir. 1996) (noting that "state law principles of common law nuisance . . . inhere in every property owner's title"). In other words, no property owner has a right to maintain their property as a nuisance. When the government acts to eliminate the nuisance, no compensable taking has occurred. *DeBenedictis*, 480 U.S. at 491 n. 20. As the Supreme Court has implicitly recognized, this reasoning applies with equal force to physical takings:

> Where "permanent physical occupation" of land is concerned, we have refused to allow the government to decree it anew (without compensation), no matter how weighty the asserted "public interests" involved—*though we would permit the government to assert a permanent easement that was a pre-existing limitation upon the land owner's title.*

3

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1028-29 (1992) (emphasis added); *see also Cedar Point Nursery v. Hassid*, 594 U.S. 139, 160 (2021) (noting that "many government-authorized physical invasions will not amount to takings because[,]" for example, "the government owes a landowner no compensation for requiring him to abate a nuisance on this property, because he never had a right to engage in the nuisance in the first place"). Here, the "pre-existing limitation" is that Plaintiffs never had the right to maintain their property as a nuisance. The Court of Federal Claims, in a matter arising in this district, has followed the Supreme Court's reasoning in *Lucas* and held that the nuisance exception applies with equal force to physical takings. *See John R. Sand & Gravel Co. v. United States*, 60 Fed. Cl. 230, 234-39 (2004) (noting that "the background principles exception to takings liability discussed in *Lucas* can apply to both regulatory and physical takings cases").

Third, Plaintiffs fail to cite any authority that supports their claim they are owed compensation for the sale of their property after it was adjudicated to be a public nuisance and transferred to the Land Bank. *Ypsilanti Charter Twp. v. Kircher*, 761 N.W.2d 761 (Mich. Ct. App. 2008), relied on by Plaintiffs, addressed the execution of a money judgment for nuisance abatement costs. *Id.* at 282-83. There, the Michigan Court of Appeals held the trial court erred in imposing an equitable lien to secure payment of a money judgment because there was an adequate remedy at law. *Id.* at 283. Here, Plaintiffs failed to contest the NAP lawsuits altogether. As

there was no one to execute a money judgment against, the Circuit Court found there was "no other remedy . . . available" and transferred title to the DLBA.[2] *See* ECF No. 19-2, PageID.612-13. The *Kircher* Court did note that, if the defendant's realty was sold in connection with execution of the money judgment, any surplus proceeds must be paid to defendant.[3] *Kircher*, 761 N.W.2d at 285 n. 13 (citing Mich. Comp. Laws § 600.6044). The circumstances here are entirely distinguishable because (1) there was no money judgment entered and (2) the sale of Plaintiffs' properties by the DLBA did not occur in the context of execution of a judgment.[4]

The other cases cited by Plaintiffs on this point are similarly distinguishable because none involved a situation where (1) the entire property is adjudicated to be a nuisance, (2) there is no property owner to execute a judgment against, and (3) there is no adequate remedy for nuisance abatement aside from an order transferring title to the property to encourage its redevelopment. *Cheboygan County Construction Code Department v. Burke*, 384 N.W.2d 77 (Mich. Ct. App. 1985)

---

[2] The judgments also do not require Plaintiffs to pay any money absent a subsequent request by the DLBA for the entry of a money judgment (which Plaintiffs do not allege). As the *Kircher* Court noted, "[i]ssuance of execution is the ordinary method of enforcing a legal or equitable judgment *for the payment of money*." *Id*. at 284.

[3] *Ypsilanti Fire Marchal v. Kircher*, 730 N.W.2d 481 (Mich. Ct. App. 2007) arose out of the same facts and is distinguishable on the same basis. *See Id*. at 509.

[4] Mich. Comp. Laws § 600.6044 applies only to sales in connection with execution on judgments.

involved execution on a money judgment for the costs of demolishing a structure that had been declared a nuisance. *Id*. at 78. *Welch v. Stowell*, 2 Doug. 332 (Mich. 1846) dealt with a Detroit ordinance that allowed the City Council to summarily declare "houses of ill-fame" to be a nuisance, which it could then abate by demolition of the structure. *Id*. at 333-41. The Michigan Supreme Court found the ordinance "nugatory and void" because the summary process violated constitutional due process requirements and because demolition of the structure was not necessary to abate the declared nuisance (*i.e.*, the use of the structure for unlawful activities). *Id*. at 335-42. Here, the proceedings were not summary and the entire property, not a mere use of the property, was adjudicated to be a public nuisance. *Bertwistle v. Goodrich*, 19 N.W. 143 (Mich. 1884) involved the question of whether a property owner was justified in seizing cattle pastured near his property and has no relevance to the issues here. *Grover v. Huckins*, 26 Mich. 476 (1873) is also irrelevant: the issue in *Grover* was the validity of an ordinance that permitted a village official to summarily seize animals running at large and to sell the animals to recoup certain amounts. *Id*. at 477-79. The Court held that the summary seizure and sale of the animals did not violate the defendant's due process rights because the ordinance provided he retained the rights to the proceeds of the sale of his animals, less permitted deductions for costs. Here, again, the proceedings were not summary. Nor

6

is there any authority supporting Plaintiffs' claim to any "surplus" generated by the sale of their former property.

## II.     The *Rooker-Feldman* Doctrine Bars Plaintiffs' Claims.

Plaintiffs fail to cite any authority supporting their position that the government must pay compensation where it acts to abate a nuisance. Accordingly, the claims asserted in the FAC necessarily require this Court to reject the judgments entered by the Wayne County Circuit Court, which adjudicated Plaintiffs' properties to be public nuisances in their entirety. This is precisely the type of case over which federal courts lack jurisdiction. *Skinner v. Switzer*, 562 U.S. 521, 531 (2011) (*Rooker-Feldman* bars claims "complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment.") (footnote omitted). This is true even where the plaintiff alleges that "the state court's action was unconstitutional." *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983).

Plaintiffs' reliance on cases involving the application of the *Rooker-Feldman* doctrine to tax foreclosures is misplaced because a plaintiff alleging a taking based on the retention of the proceeds of an auction following a foreclosure for non-payment of property taxes need not challenge the underlying foreclosure itself. *See Wings as Eagles Deliverance Ministry v. City of Detroit*, No. 20-13186, 2022 WL 220643, at *4 (E.D. Mich. Jan. 25, 2022) (noting that because "property owners have

a right to any surplus proceeds from a tax foreclosure sale" that claim does not "seek to invalidate a state court judgment"). To the contrary, here, any claim to compensation necessarily requires this Court to reject the state court judgments adjudicating Plaintiffs' properties to be a nuisance. This is particularly true for the properties that Plaintiffs allege have not been sold by the DLBA. For those properties, Plaintiffs challenge the transfer of title to the property adjudicated to be a nuisance to the DLBA without the payment of compensation, not the retention of any alleged surplus. *See*, *e.g.*, FAC, ECF No. 31, PageID.137-39.

Nor is this a case where the alleged harm was caused by an act antecedent to the judgment. First, Plaintiffs do not allege that the Land Bank engaged in any wrongdoing. Plaintiffs allege that the DLBA represented it would incur nuisance abatement costs and that, in some cases, the DLBA sold the property after title was transferred. *See* FAC, ECF No. 13, PageID.316-17, ¶¶ 44-48. However, as noted above, many of the judgments state that the Land Bank may abate the nuisance as it sees fit, including by sale. *See, e.g.*, ECF No. 19-1, PageID.607. Second, Plaintiffs do not allege that they were injured by any pre-judgment acts by the DLBA. They allege that they were injured because title to their property was transferred to the DLBA and that the DLBA either retained the property, or sold it and retained the proceeds. Both alleged injuries were caused by the judgments entered by the Wayne County Circuit Court, not any pre-judgment action by the DLBA. *See e.g.*, FAC,

8

ECF No. 13, PageID.345-46, ¶¶ 109-16. These facts are distinguishable from the cases Plaintiffs cite on this point, all of which involve claims arising out of allegations of pre-judgment misconduct. For example, in *Hohenberg v. Shelby County*, 68 F.4th 336, 340 (6th Cir. 2023), the court held that the *Rooker-Feldman* doctrine did not bar "claims target[ing] ancillary litigation expenses rather than the application of law to fact[.]" Here, the application of law to fact (*i.e.*, that Plaintiffs' properties were public nuisances) *is* what Plaintiffs challenge.

## III.   At a Minimum, Plaintiffs' Claims are Barred by Collateral Estoppel.

Regardless of whether Plaintiffs' claims are barred by res judicata, they are barred by collateral estoppel. As set forth above, no compensation is owed where the government acts to abate a nuisance. *Cedar Point Nursery*, 594 U.S. at 160. Therefore, any claim for compensation requires Plaintiffs to establish that their properties were not, in fact, nuisances. Plaintiffs' properties were already adjudicated to be public nuisances in their entirety by the Wayne County Circuit Court. ECF Nos. 19-1–19-13. Plaintiffs may not challenge that determination before this Court. *Monat v. State Farm Ins. Co*., 677 N.W.2d 843, 845-46 (Mich. 2004). The sole case Plaintiffs cite on this point, *Fox v. County of Saginaw*, No. 19-CV-11887, 2021 WL 120855, at *10 n. 8 (E.D. Mich. Jan. 13, 2021), does not support their argument because it arose in the context of a tax foreclosure. There, no issue decided by the state court was found to preclude a takings claim because the

foreclosure judgment did not affect the property owner's right to the surplus generated by a subsequent sale. *See id*. at *10. Here, the Wayne County Circuit Court's determination that Plaintiffs' properties constituted public nuisances is both binding on this Court and dispositive of Plaintiffs' claims for compensation.

## IV. Certain Plaintiffs' Claims are Time-Barred.

Plaintiffs argue that the accrual date for claims regarding properties that were sold at auction was the date the DLBA retained the sale proceeds. However, all of the cases that Plaintiffs cite in support of their argument involved tax foreclosures. *See* ECF No. 22, PageID.717. This is not a tax foreclosure case and Plaintiffs have not cited any case that supports their claim to the proceeds of a subsequent sale after their properties were transferred to the DLBA through judgments entered by the Wayne County Circuit Court. To the extent Plaintiffs have alleged any viable claims (they have not) those claims accrued on the dates the respective judgments transferring the properties to the DLBA were entered. *Harrison v. Montgomery Cnty.*, 997 F.3d 643, 649 (6th Cir. 2021) ("A property owner . . . may bring a § 1983 federal takings claim in federal court as soon as their property has been taken.") (quotation marks omitted).

Regardless of any tolling, the claims of certain Plaintiffs are time-barred. Morgan, Tate & Brewer, LLC alleges that the DLBA took title to its property on or about December 19, 2018. ECF No. 13, PageID.305, ¶ 14. Even applying the 101

days of COVID tolling, the three-year statute of limitations for Morgan, Tate & Brewer, LLC's § 1983 claims elapsed on March 30, 2022. Ward's House, LLC alleges that the DLBA took title to its property on June 5, 2019. *Id*., PageID.302, ¶ 7. Even accounting for COVID tolling, the statute of limitations for Ward's House, LLC's § 1983 claim elapsed on September 14, 2022. Tremayne Terrell alleges the DLBA took title to property belonging to his mother's estate on or about May 16, 2017. *Id*., PageID.303, ¶ 9. Accordingly, even with COVID tolling, the statute of limitations for a § 1983 claim would have run on August 25, 2020. Under Mich. Comp. Laws § 600.5852(4), her estate had until August 25, 2023 to file a § 1983 claim. The § 1983 claims asserted by Morgan, Tate & Brewer, LLC;  Ward's House, LLC; and the Estate of Mary Terrell are therefore time-barred.

Additionally, Sheila Todd alleges that the DLBA took title to her property on or about July 17, 2015. *Id*., PageID.348, ¶ 129. The six-year statute of limitations for her state-law claims, including 101 days of COVID tolling, elapsed on October 26, 2021. Ruby Washington alleges that the DLBA took title to her property on October 10, 2015. *Id*., PageID.301, ¶ 5. The statute of limitations for her state-law claims, including 101 days of COVID tolling, elapsed on January 19, 2022. Accordingly, the claims asserted by Sheila Todd and Ruby Washington are time-barred.[5]

---

[5] Plaintiffs also argue that the claims asserted by Plaintiffs added in the FAC relate back to the filing of the initial Complaint. While Defendants do not believe this issue is dispositive of whether the claims of any Plaintiff is timely, at least one court in

## V.     Plaintiffs' § 1983 Claims Fail.

Plaintiffs do not cite any case holding that a property owner is entitled to compensation where their property is adjudicated to be a nuisance in its entirety and title to the property is transferred to the government to equitably defray the costs of nuisance abatement. Instead, Plaintiffs cite cases standing for the proposition that the owners of tax-foreclosed properties retain an interest in the proceeds of any subsequent sale in excess of the tax debt. These cases have no relevance here, where Plaintiffs' properties were adjudicated to be public nuisances, not foreclosed upon for failure to pay a tax debt. As Plaintiffs admit, "[t]aking the property was not unconstitutional." ECF No. 22, PageID.723. As set forth above, no compensation is owed where the government acts to abate a nuisance. Plaintiffs have failed to allege any constitutional violation.

Plaintiffs' § 1983 claims fail because Plaintiffs cannot demonstrate that any action taken by the Defendants was the proximate cause of their alleged injuries. Instead, Plaintiffs' alleged injuries were caused—to the extent any injury was suffered at all—by the judgments entered by the Wayne County Circuit Court, which

---

this District has held that "the relation back doctrine does not apply in putative class actions because putative class members are not considered parties prior to a class certification ruling. Therefore, when . . . putative class members become named plaintiffs, they are new parties, asserting new causes of action, and relation back is unavailable." *Currithers v. FedEx Ground Package Sys., Inc.*, No. 04-10055, 2012 WL 458466, at *8 (E.D. Mich. Feb. 13, 2012).

adjudicated the properties to be public nuisances and transferred title to the DLBA.

Plaintiffs do not meaningfully respond to this argument. Instead, Plaintiffs merely

point out that in *Powers v. Hamilton Public Defender Commission*, 501 F.3d 592

(6th Cir. 2007) (which Defendants cite for its discussion of § 1983's proximate cause

requirement), the defendant was found liable despite not making any material

misrepresentations to the judge. This argument misses the point. Because the

Defendant in *Powers* failed to bring the issue of his client's indigency to the court's

attention, the court could not consider the issue, and no action the court took could

have been a superseding cause. *Id*. at 609-11. Here, Plaintiffs do not (and could not)

claim that the Wayne County Circuit Court was not presented with the issue of

whether Plaintiffs' properties were public nuisances. To the extent that Plaintiffs

believe that the Wayne County Circuit Court misapplied the law in determining their

properties to be nuisances and transferring title to the DLBA, any such claim fails

under § 1983. *Egervary v. Young*, 366 F.3d 238, 250-51 (3d Cir. 2004) ("We

conclude that where . . . the judicial officer is provided with the appropriate facts to

adjudicate the proceeding but fails to properly apply the governing law and

procedures, such error must be held to be a superseding cause, breaking the chain of

causation for purposes of § 1983 . . . liability").

In opposing the Motion to Dismiss, Plaintiffs contend that the DLBA made

misleading representations to the Wayne County Circuit Court about abatement

costs it would incur. However, this overstates the claims of the FAC and, therefore, the facts before this Court. Plaintiffs aver that the DLBA "represented to the state court that it would incur costs to remove or abate the nuisance that would greatly exceed the post-abatement value of the real estate." ECF No. 22, PageID.725. However, the cited paragraphs of the FAC merely allege that the DLBA represented to the Circuit Court that transfer of title to the property would avoid protracted litigation to execute any money judgment against the absentee owners who had failed to contest the NAP lawsuit. *See* FAC, ECF No. 13, PageID.315-16, ¶¶ 43-5. Plaintiffs also contend that the DLBA had no intention of actually abating the nuisance. As noted above, however, the majority of the Circuit Court judgments specifically contemplate that the DLBA would abate the nuisance by selling the property. *See, e.g.*, ECF No. 19-1, PageID.607. And that is precisely what Plaintiffs allege the DLBA did. FAC, ECF No. 13, PageID.317, ¶ 48 ("The DLBA eventually sells the houses and uses the sale proceeds to fund its own operations").

## VI.   Plaintiffs' *Monell* Allegations are Insufficient.

Plaintiffs have failed to allege that the February 7, 2014 City Council Resolution (the "Resolution") was the moving force behind their alleged injury, or that the Resolution was facially unlawful. The Resolution simply authorized the DLBA to file nuisance abatement lawsuits and to retain the proceeds of the sale of any properties transferred to the DLBA in such actions. It was not unlawful for the

DLBA to retain those proceeds because no compensation is required where the government acts to abate a nuisance. Nor was it unlawful for the Wayne County Circuit Court to equitably transfer title to Plaintiffs' properties to the DLBA. Plaintiffs argue that such relief was inconsistent with Michigan case law. However, both cases they cite, *Ypsilanti Charter Twp. v. Kircher*, 761 N.W.2d at 781 and *Ypsilanti Fire Marchal v. Kircher*, 730 N.W.2d at 514, involved the execution of a money judgment and are therefore inapposite. Here, there was no money judgment entered; indeed, there was no one to execute a money judgment against, as Plaintiffs failed to contest the underlying NAP lawsuits.

## VII.   Plaintiffs' State Law Claims Fail.

Plaintiffs' state law claims fail for the same reason that their federal claims do: Plaintiffs have failed to identify any authority to support their contention that compensation is required when the government acts to abate a nuisance. Like federal courts, Michigan courts have consistently held that there is a nuisance exception to takings under the Michigan Constitution. *Kircher*, 761 N.W.2d at 775. Plaintiffs attempt to seize upon a supposed concession that their properties were taken "for the purpose of eradicating blight" to claim that compensation is required. ECF No. 22, PageID.732. But Defendants' argument—by no means a concession—was that Plaintiffs' properties were "not *condemned* for the purpose of eradicating blight[.]" ECF No. 19, PageID.598 (emphasis added). Had the City condemned Plaintiffs'

properties for the purpose of eradicating blight, compensation may be required under the Michigan Constitution. However, *Plaintiffs' properties were not condemned*. They were adjudicated to be public nuisances by the Wayne County Circuit Court and title to those properties was transferred to the DLBA by the court to defray the costs of nuisance abatement.

Plaintiffs also fail to explain why Defendants are not immune from damages. The sole case Plaintiffs cite for the proposition that municipalities are not immune to damages on takings claims, *Electro-Techs v. H.F. Campbell Co.*, 445 N.W.2d 61, 76-7 (Mich. 1989) predates *Jones v. Powell*, 612 N.W.2d 423, 426-27 (Mich. 2000), in which the Michigan Supreme Court held there was no inferred damages remedy for claims regarding violations of the Michigan Constitution against a municipality. While Plaintiffs are correct that Michigan courts have permitted takings claims against a municipality in the context of tax foreclosures, that case law does not support a damages remedy here, where Plaintiffs have failed to allege any compensable taking.

## VIII. Plaintiffs' Direct Fifth Amendment Claim Fails.

Plaintiffs suggest that their direct claim under the Fifth Amendment should not be dismissed in the event that this Court determines that a state court judge, not Defendants, caused the alleged injury. This issue is irrelevant as Plaintiffs did not name any judge as a defendant. Plaintiffs' claims fail here because the government

16

does not owe compensation when it acts to abate a nuisance, not because this is the rare instance where a plaintiff has suffered a compensable taking but is left without a viable remedy.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court to dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice, and grant Defendants any further relief the Court deems just.

Dated: November 14, 2025          Respectfully submitted,

*/s/ David H. Fink*
David H. Fink (P28235)
Nathan J. Fink (P75185)
Philip D.W. Miller (P85277)
David A. Bergh (P83696)
FINK BRESSACK
500 Griswold St., Suite 2400
Detroit, MI 48226
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
pmiller@finkbressack.com
dbergh@finkbressack.com

*Counsel for Defendants City of Detroit and the Detroit Land Bank Authority*

Conrad L. Mallett, Jr. (P30806)
Jason H. Harrison (P62765)
CITY OF DETROIT LAW DEPARTMENT
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 500
Detroit, MI 48226
Tel: (313) 224-4550
conrad.mallett@detroitmi.gov
jason.harrison@detroitmi.gov

17

*Counsel for Defendant City of Detroit*